## BORDER PIPE LINE CO. v. FEDERAL POWER COMMISSION.

### No. 9571.

United States Court of Appeals District of Columbia Circuit.

Argued Oct. 22, 1948.

Decided Nov. 22, 1948.

Mr. John C. Dawson, of Houston, of the Bar of the State of Texas, pro hac vice, by special leave of Court, with whom Mr. J. Ross Gamble, of Washington, D. C., was on the brief, for petitioner.

Mr. Bradford Ross, General Counsel, Federal Power Commission, of Washing-

150

ton, D: C., with whom Messrs. Louis W. McKernan and W. Russell Gorman, both of Washington, D. C., Principal Attorneys, Federal Power Commission, were on the brief, for respondent.

Mr. James E. F. Gammon, of Washington, D. C., entered an appearance for C. Huffman Lewis, amicus curiae.

Before PRETTYMAN and PROCTOR, Circuit Judges, and BAILEY, District Judge, sitting by designation.

PRETTYMAN, Circuit Judge.

This is a petition for review of an order of the Federal Power Commission. Petitioner owns and operates a gas pipe line located wholly within the State of Texas. It sells its gas at its terminus near the Rio Grande River to an industrial consumer which transports the gas into Mexico and uses it there. Petitioner operates under permits for the export of gas issued to it in 1942 by the Commission[1] and by the President.[2] The order under review was issued February 14, 1947, and in it the Commission held that petitioner is a "natural-gas company" within the meaning of the Natural Gas Act and thus must have a certificate of public convenience and necessity, which the order authorized to issue. The consequence which gives rise to the controversy is that the order would place petitioner within all the federal regulatory provisions applicable under the statute to "natural-gas companies".

The statute defines a natural-gas company as follows:[3]

"(6) 'Natural-gas company' means a person engaged in the transportation of natural gas in interstate commerce, or the sale in interstate commerce of such gas for resale.

"(7) 'Interstate commerce' means commerce between any point in a State and any point outside thereof, or between points within the same State but through any place outside thereof, but only insofar as such commerce takes place within the United States."

The Act contains numerous regulatory provisions relating to "natural-gas companies". It also has a section[4] relating to the export of gas from the United States, which section is applicable to any "person" and not merely to natural-gas companies. As we have indicated, petitioner has complied with this section.

Interstate commerce and foreign commerce have been distinct ideas ever since they appeared as two concepts in the Constitution. The clause there provides that Congress shall have power "To regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes".[5] "Interstate commerce" does not include foreign commerce, unless Congress by definition for the purposes of a particular statute includes them both in the single expression. Congress has frequently done that. It has also many times applied its enactments to "interstate and foreign commerce" and is perfectly familiar with that expression and that idea.[6] In the present statute it first declared the necessity for federal regulation of transporta-

---

[1] Under Sec. 3 of the Natural Gas Act of June 21, 1938, 52 Stat. 822, 15 U.S.C.A. § 717b.

[2] Under Executive Order No. 8202, 4 Fed.Reg. 3243 (1939).

[3] Sec. 2(6) and (7), 52 Stat. 821, 15 U.S.C.A. § 717a(6) and (7).

[4] Sec. 3, 52 Stat. 822, 15 U.S.C.A. § 717b.

[5] Clause 3 of Section 8 of Article I.

[6] Some examples of expressions used by Congress are:

Act of Feb. 22, 1935, relating to transportation of petroleum products, 49 Stat. 30, 15 U.S.C.A. § 715a(3)—"from any place in the United States to a foreign country".

Federal Firearms Act, 52 Stat. 1250 (1938), 15 U.S.C.A. § 901(2)—"interstate or foreign commerce".

Bituminous Coal Act, 50 Stat. 90 (1937), 26 U.S.C.A. § 3526(d)—"commerce among the several States and Territories, with foreign nations, and with the District of Columbia."

Securities Act of 1933, 48 Stat. 74, 15 U.S.C.A. § 77b(7)—"between any foreign country and any State, Territory, or the District of Columbia".

Securities Exchange Act of 1934, 48 Stat. 882, 15 U.S.C.A. § 78c(a) (17)—"between any foreign country and any State".

tion and sale "in interstate and foreign commerce". It then provided one section applicable to exports "from the United States to a foreign country", and in other sections provided regulatory measures applicable to "interstate commerce", defining that term without mention of foreign commerce. In view of the prevailing practice of Congress in other acts, the separation of the two subjects in this Act must be noticed and, we think, observed.

The plan of regulation revealed by the statute thus read seems reasonable. It seems reasonable, or at least not unreasonable, that Congress should be concerned only with the fact of exportation or importation in the case of foreign commerce, but with rates, practices, accounting, facilities and financing in the case of domestic commerce. Of course, if a company be in both interstate and foreign commerce, one might burden the other and so produce the result which the burden of intrastate on interstate commerce causes. But we do not have that situation here. The operation before us is wholly local, and it is only because of petitioner's sales for foreign commerce that the Commission seeks to control all its activities.

Moreover, foreign commerce was specifically included in the bill which was the original legislative foundation for the final enactment of this Act, but was omitted in that enactment. In the bill introduced on February 6, 1935, by Representative Rayburn,[7] addressed to the entire subject of federal public utility regulation, one Title related to nautral-gas companies. The phrase "or from or to any place in the United States to or from a foreign country" was in the section which defined the applicability of that part of the proposed act. That Title of Mr. Rayburn's bill was not then enacted. Instead, the proposal for regulation of gas companies became H. R. 11662 in the next session, but without the phrase just quoted, and so the bill remained throughout successive sessions until enactment.

We are also impressed with the fact that although this petitioner was before the Commission and secured its permit to export in 1942, it was not until 1947 that the Commission asserted its regulatory authority in other respects over that same business. We are not advised that the Commission has asserted that power in any other instance until its order in this case. The eight years and more which passed between the approval of the Act in 1938 and the first assertion by the Commission of general regulatory power over companies engaged in foreign commerce but not otherwise subject to such general powers, seems to indicate a long-standing administrative view contrary to the Commission's present position. Indeed it appears that when the Commission was considering the applications of this petitioner in 1942, counsel for the Commission advised it in writing that a certificate of public convenience and necessity under Section 7(c) was not required, saying in part:

"It is significant to note that the exportation of natural gas from the United States to a foreign country, or the importation of natural gas from a foreign country is not 'interstate commerce' as that term is contemplated by the Act. The legislative intent as to the limitation placed on the definition is clearly expressed in the concluding portion thereof, namely, 'only in so far as such commerce takes place within

---

Motor Carrier Act, 49 Stat. 551 (1935), 49 U.S.C.A. § 306—"interstate or foreign operation".

Communications Act of 1934, 48 Stat. 1065, 47 U.S.C.A. § 153(h)—"interstate or foreign communication".

Interstate Commerce Act, 41 Stat. 474 (1920), 49 U.S.C.A. § 1(1) (c)—"from one State or Territory of the United States * * * to any other State or Territory of the United States * * * or from or to any place in the United States to or from a foreign country".

Food and Drugs Act, 42 Stat. 1487 (1923), 21 U.S.C.A. § 62—"interstate or foreign commerce".

Food and Drugs Act, 34 Stat. 768 (1906), 21 U.S.C.A. § 2—"from any foreign country, or shipment to any foreign country".

Meat Inspection Act, 34 Stat. 1260 (1907), 21 U.S.C.A. § 71—"interstate or foreign commerce".

Federal Caustic Poison Act, 44 Stat. 1403 (1927), 15 U.S.C.A. § 402(c)—"interstate or foreign commerce".

[7] Title III of H.R.5423, 74th Cong., 1st Sess.

the United States.' Applicant's proposed operations do not include either transportation of natural gas in interstate commerce, or sales of natural gas in interstate commerce, which would bring such operations within the term, 'interstate commerce', as such term is defined by said Section 2(7) of the Act."

The Commission vigorously urges various arguments based upon internal evidence in the Act, which evidence they glean from reading various provisions. Petitioner follows the same process and obtains opposite results. Thus, the Commission says that the clause "but only insofar as such commerce takes place within the United States" indicates that except for that limitation the Act would apply to commerce outside the United States. Petitioner says, on the contrary, that the clause is a specific exclusion from the Act of all foreign commerce and was intended to insure that such commerce which occurs even in the course of interstate commerce was not included. Again the Commission perceives inconsistencies in the scheme of regulation if it be not applied to foreign commerce. The petitioner, on the contrary, points to incongruities in the Act if its provisions be applied to such commerce. It points to the rate-making provisions, the requirements for filing schedules of charges, the prohibitions against discrimination, the power to require extensions of facilities, the ascertainment of costs or fair value of property, the prescription of methods of accounting, as matters peculiarly applicable to the regulation of domestic commerce, in which the consumers sought to be protected are citizens, but which are singularly inapt when applied to foreign commerce. They also point to the difference in the reference to the public interest which appears in Section 3, relating to foreign commerce, and that which appears in Section 7(c), which relates to certificates of public convenience and necessity. In the former instance, the permit must issue unless the proposed exportation "will not be consistent with the public interest", whereas, in the latter instance, a certificate can issue only if the proposed sale, etc., "is or will be required" by the public interest.

But these conflicting impressions and views are inconclusive in our minds. We find a clear answer in the considerations which we have described in the forepart of this opinion. The circumstances which we there outlined define a limit to judicial power in "interpreting" a statute. We are asked by the Commission to interpret "interstate commerce" so as to include foreign commerce, or to read the statutory definition as though it contained the phrase originally included but later eliminated by Congress in the legislative course of the Act. This we cannot do. We cannot write into an act of Congress a provision which Congress affirmatively omitted.

We add a further word upon the subject, because the situation with which we are here confronted is of general importance. Questions such as the one presented in this case are properly for the Congress. The circumstances upon which they arise are familiar. Congress uses expressions of established meaning. It takes action of recognized implications; e. g., it strikes from a pending bill a clause of clear import. But the administrative body finds a sufficient penumbra of meaning to justify a claim to more authority than appears upon the face of its grant. It asserts the extended authority and thus forces the issue upon the courts. It asks the courts to divine an intent on the part of Congress and then to decree that the words of the statute spell that intent. Of course, if there be a plain intent, or purpose, or objective, the statute must be deemed to be in pursuit of it, and the courts will enforce that view. But where relatively plain language and congressional conduct of accepted implication point one way and the contrary appears only through strained and complex assumptions and deductions, questions which the administrators may have as to the full intent and desirable scope of the congressional action ought to be addressed to the Congress. The prime responsibility for making statutory meaning clear is on the Congress. It is bad from the viewpoint of sound government for the courts to twist strange results out of otherwise understood expressions of the legislature. If, perchance, the judiciary does not reach the objective at which the

legislature aimed, there is a most undesirable confusion of functions of the two branches. Such practice by the judiciary is also bad from the viewpoint of the law generally. Words of established meaning are given an unnatural significance, and thereafter whenever they appear the law is uncertain. The interpretation of statutes is not like the interpretation of a will, where the person whose intent is to be ascertained no longer lives and some meaning must be given his expressions however meaningless; or of a contract as to which the sole parties differ in their assertions of intent or meaning. In those situations an interpretation is the only available procedure and, once had, is irretrievable. Not so in the case of a statute; the Congress is in frequent session, its doors open and its committees available. Its procedure is no more complicated than that of the courts. If an administrative agency thinks that the real intent and purpose of a statute is broader than or different from its terms, it need only ask Congress for an enlargement or clarification. We are no longer in an age when such inquiry is impractical. The wise and sound course for the courts is to give to the terms of a statute their plain meaning, so long as the resultant effect is sensible and not in conflict with a discernible purpose.

Our views upon the meaning of the statute make unnecessary the consideration of other points presented. The petition to set aside the order of the Commission must be and is granted.

Order of the Commission set aside.