**PRECISE IMPORTS CORP., Mitchell Mogal, Inc. and Topline Industries Corp., Plaintiffs,**

v.

**Joseph P. KELLY, Collector of Customs for the Port of New York, et al., Defendants.**

United States District Court
S. D. New York.
June 14, 1963.

Murray Rosof, New York City, for plaintiffs; A. Bernard King, New York City, of counsel.

Robert M. Morgenthau, U. S. Atty. for the Southern Dist. of New York; Thomas H. Baer, Asst. U. S. Atty., of counsel.

FEINBERG, District Judge.

This controversy stems from the decision by defendant Kelly, who is the Collector of Customs for the Port of New York ("the Collector"), to exclude from the United States knives imported by plaintiffs on the ground that they are "switchblade knives" within the meaning of 15 U.S.C. §§ 1241, 1242. Pursuant to this decision, the Collector demanded that knives which plaintiffs had already imported and received be redelivered to the Collector. Plaintiffs have not returned the knives, and the Collector has, therefore, demanded liquidated damages against bonds which plaintiffs had posted. In the complaint, plaintiffs seek declaratory and injunctive relief against this action. Two motions have been filed: one by the defendant Collector to dismiss the complaint, and the other by plaintiffs for summary judgment.

The Collector's motion to dismiss alleges that this Court lacks jurisdiction over the subject matter of this suit because 28 U.S.C. § 1583 vests "exclusive jurisdiction" in the Customs Court. Section 1583 provides as follows:

"*The Customs Court shall have exclusive jurisdiction to review* on protest the decisions of any collector of customs, including all orders and findings entering into the same, as to the rate and amount of duties chargeable and as to all exactions of whatever character within the jurisdiction of the Secretary of the Treasury; *decisions excluding any merchandise from entry or delivery, under any provision of the customs laws;* and the liquidation or reliquidation of any entry, or the refusal to pay any claim for drawback or to reliquidate an entry for a clerical error as provided by the customs laws." (Emphasis added.)

Sections 1514 and 1515 of Title 19 U.S.C. set out the procedure which must be followed to originally protest the decision of the Collector

The central question on this motion is whether the exclusion which is challenged here is one "under any provision of the customs laws." In Croton Watch Co. v. Laughlin,[1] the Collector of Customs excluded entry of plaintiff's goods under 15 U.S.C. § 1124, which prohibits the importation of goods that copy or simulate the name or trademark of goods of an American manufacturer. Plaintiff sought injunctive relief in this Court, which was denied. In reversing this decision, the Court of Appeals for this Circuit expressly passed on and rejected the contention that jurisdiction was solely in the Customs Court (208 F.2d at 95–96):

"Reliance on 28 U.S.C.A. § 1583 to establish that the Customs Court has exclusive jurisdiction is misplaced. As stated in the Reviser's Note, this enactment was merely declaratory of prior statutes appearing in Title 19. See Patchogue-Plymouth Mills Corp. v. Durning, 2 Cir., 101 F.2d 41. We think the section inapplicable to such an action as the one at bar."

The Collector attempts to distinguish *Croton Watch* on the ground that it involved a trademark dispute, and should therefore be limited to actions of the Collector in that area. However, the issue of the effect of 28 U.S.C. § 1583 was broadly presented to the Court of Appeals,[2] and the distinction is not well taken. Moreover, it is worth noting that the statute principally involved in *Croton Watch* (15 U.S.C. § 1124) specifically required action by the Collector. Despite this, the holding of the Court was, in effect, that the statute was not a provision "of the customs laws," within the meaning of 28 U.S.C. § 1583. In this case, the statute involved (15 U.S.C. §§ 1241, 1242) makes no mention of the Collector and is essentially a criminal statute, so that *a fortiori* it is not a provision "of the customs laws." In Richard J. Spitz, Inc. v. Dill,[3] a spice importer sought declaratory and injunctive relief in this Court against the Collector of Customs for excluding bales of spice. The Court there rejected the contention that it lacked jurisdiction, citing Croton Watch and other cases.[4] There are decisions supporting the position of the Collector here,[5] and were the matter one

1. 208 F.2d 93 (2 Cir. 1953).

2. See Brief for Defendant-Appellee, Frank B. Laughlin, on appeal, pp. 14–17, Croton Watch Co. v. Laughlin, *supra*.

3. 140 F.Supp. 947 (S.D.N.Y.1956).

4. *Id.* at 950. While the Collector in the *Dill* case did not make the express contention that 28 U.S.C. § 1583 ousted the District Court of jurisdiction, plaintiff Spitz did rely heavily on the *Croton* case in support of its argument that the District Court did have jurisdiction. Plaintiff's Memorandum, pp. 3–7, filed in the *Dill* case.

5. Eastern States Petroleum Corp. v. Rogers, 108 U.S.App.D.C. 63, 280 F.2d 611, *cert. denied*, 364 U.S. 891, 81 S.Ct. 222, 5 L.Ed.2d 187 (1960); Patchogue-Plymouth Mills Corp. v. Durning, 101 F.2d 41 (2 Cir. 1939); Riccomini v. United States, 69 F.2d 480 (9 Cir. 1934).

of first impression in this Court, the question would not be free from doubt. However, under the authority in this Circuit,[6] the Collector's motion to dismiss should be denied.

Turning now to plaintiffs' motion for summary judgment, plaintiffs argue that the statute under which the Collector excluded plaintiffs' knives applies by its terms only to commerce among the states and not to shipments into the United States from foreign countries. That statute provides as follows:

"§ 1241. Definitions

"As used in this chapter—

"(a) The term 'interstate commerce' means commerce between any State, Territory, possession of the United States, or the District of Columbia, and any place outside thereof.

\*   \*   \*   \*   \*   \*

"§ 1242. Introduction, manufacture for introduction, transportation or distribution in interstate commerce; penalty

"Whoever knowingly introduces \* \* \* into interstate commerce \* \* \* any switchblade knife, shall be fined not more than $2,000 or imprisoned not more than five years, or both."

■ I conclude that the statute covers foreign imports. First, the normal meaning of the words "commerce be-

tween any State \* \* \* and any place outside thereof" includes shipments from abroad. A shipment between New York and London is, in the normal sense of the words used, a shipment between New York State and a place outside of that state.[7]

Second, the context and the legislative history of this Act indicate that it applies to foreign imports. The Senate committee report,[8] in explaining the need for and background of the proposed statute, referred to the report of a subcommittee of the Senate on juvenile delinquency and quoted the following portion of that report:

"The subcommittee's investigation disclosed that many of these knives were manufactured abroad and distributed by firms in this country who handle numerous items in addition to switchblade knives."[9]

The report of the House Committee on Interstate and Foreign Commerce recommending enactment of this statute also indicated legislative awareness of the foreign aspect of the problem:

"Hearings on this legislation revealed that over 1 million switchblade knives are distributed and sold each year in this country, and that of these some 200,000 are imported."[10]

Both reports make clear that the purpose of the statute was "doing away with switchblade knives."[11] Given this

6. See also Truth Seeker Co. v. Durning, 147 F.2d 54 (2 Cir. 1945); Dioguardi v. Durning, 139 F.2d 774 (2 Cir. 1944); cf. Puget Sound Freight Lines v. United States, 173 F.2d 578, 36 CCPA 70 (1949).

7. See Caserta v. Home Lines Agency, Inc., 154 F.Supp. 356 (S.D.N.Y.1957), 175 F.Supp. 409 (S.D.N.Y.), modified on other grounds, 273 F.2d 943 (2 Cir. 1959).

8. S.Rep. No. 1980, 85th Cong., 2d Sess. (1958), reprinted in 2 U.S.Code Cong. & Ad.News 1958, at pp. 3435–46.

9. Id. at 3436.

10. H.R.Rep. No. 1945, 85th Cong., 2d Sess. 2 (1958).

11. H.R.Rep. No. 1945, 85th Cong., 2d Sess. 2 (1958); see S.Rep. No. 1980, 85th Cong., 2d Sess. (1958), 2 U.S.Code Cong. & Ad.News 1958, at p. 3437:

"In supporting enactment of this measure, however, your committee considers that the purpose to be achieved goes beyond merely aiding States in local law enforcement. The switchblade knife is, by design and use, almost exclusively the weapon of the thug and the delinquent. \* \* \* [Y]our committee believes that it is in the national interest that these articles be banned from interstate commerce."

awareness of the importation problem, and the broad purpose of the Act, the statute should be construed to extend to imports, because imports are part of "interstate commerce" as defined in section 1241. It is illogical to assume that Congress meant to deal directly with the almost one million knives made in the United States each year and did not mean to cover the 200,000 imported knives.[12]

A construction of "interstate commerce," as defined in this statute, to include foreign commerce is clearly supported by interpretation of an analogous section in another statute, the Fair Labor Standards Act. That Act uses the word "commerce" and defines it, in 29 U.S.C. § 203(b), as follows:

> "'Commerce' means trade, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof."

The Court of Appeals for the Second Circuit has recently held that this language includes foreign commerce.[13]

Plaintiffs' reliance on Border Pipe Line Co. v. Federal Power Commission [14] is misplaced. In that case, the Court held that interstate commerce did not include commerce between a foreign country and the United States. Interstate commerce was defined in that statute (15 U.S.C. § 717a(7)) as follows:

> "(7) 'Interstate commerce' means commerce between any point in a State and any point outside thereof, or between points within the same State but through any place outside thereof, but only insofar as such commerce takes place within the United States."

The first portion of that definition is similar to the one used in the statute here; but the concluding clause of the statutory definition involved in *Border Pipe Line* distinguishes it from the definition involved here. The Court there, however, did not rely on the precise words of the definition to reach the conclusion that foreign commerce was not included; instead, it examined the "plan of regulation" and the purpose of the whole statute involved (171 F.2d at 150–51):

> "In the present statute [Congress] first declared the necessity for federal regulation of transportation and sale 'in interstate and foreign commerce'. It then provided one section applicable to exports 'from the United States to a foreign country', and in other sections provided regulatory measures applicable to 'interstate commerce', defining that term without mention of foreign commerce. In view of the prevailing practice of Congress in other acts, the separation of the two subjects in this Act must be noticed and, we think, observed.
>
> "The plan of regulation revealed by the statute thus read seems reasonable."

The present statute has no such "plan of regulation"; it is a short and simple statute designed to prevent thugs and delinquents from obtaining switchblade knives. This purpose requires that the importation of such knives be covered by the statute, and such a construction of the statute is consistent with its language and legislative history. Therefore, plaintiffs' motion for summary judgment is denied.

So ordered.

12. This numerical division was recognized in the Report on Juvenile Delinquency, S.Rep. No. 1429, 85th Cong., 2d Sess., quoted in both the House and Senate Reports on the present Act.

13. Caserta v. Home Lines Agency, Inc., 273 F.2d 943 (2 Cir. 1959); see Mitchell v. Independent Ice & Cold Storage Co., 294 F.2d 186 (5 Cir. 1961), *cert. denied*, Independent Ice & Cold Storage Co. v. Goldberg, 368 U.S. 952, 82 S.Ct. 394, 7 L.Ed. 2d 386 (1962).

14. 84 U.S.App.D.C. 142, 171 F.2d 149 (1948).